# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**KATHERINE DEMETRO et al.,**            )
                                        )
　　**Plaintiffs,**                       )
                                        )
　　　　**v.**                             )        **Case No. 24-cv-02199 (APM)**
                                        )
**VAUGHAN MCLEAN, LLC et al.,**          )
                                        )
　　**Defendants.**                       )
_____ )

## MEMORANDUM OPINION AND ORDER

### I.

Plaintiffs[1] in this matter are current and former residents of two condominium complexes in Washington, D.C., known as The Village at McLean Gardens and The Village Tower at McLean Gardens, collectively known as Vaughan Place.  They bring this action on behalf of themselves and those similarity situated to vindicate rights under the District of Columbia's Tenant Opportunity to Purchase Act of 1980 (TOPA), D.C. Code §§ 42-3404.01–.13.  Specifically, Plaintiffs contend that the sale of several hundred condominium units, including ones in which they lived, was inaccurately characterized as the sale of single-family, rather than multi-family, accommodations.  That intentional misclassification, they claim, foreclosed them from exercising purchasing rights otherwise granted by TOPA.  Plaintiffs have brought this action against the condominium units' seller and buyer, Defendants Vaughan McLean, LLC and Vaughan Place,

---

[1] Plaintiffs are: Katherine DeMetro, Linda Feeney, Nicole Loy, Kim Dickens, Aramis Penland, Madison Brumbaugh, Marilyn Tomsic, Damali Baxter, Kate Kovarovic, Brittany Baine, Bruno Muscolino, Clair Schaub, Konrad Scott-Ludwig, Christopher Harris, Shahrzad Rastegar, Tammy MacDonald, Shayda Safikhani, Tomás González Ginestet, Justin Congelton, Jessica Sarkis, Valerie Evans, Maria Emanuel, and Marlene Marmol.

LLC ("Vaughan Defendants"), respectively, and two title companies, Lawyers Title Realty Services, Inc. and Computershare Trust Company, National Association ("Trustee Defendants").

Before the court are four motions: (1) Vaughan Defendants' and Computershare Trust Company's[2] Joint Motion to Dismiss, ECF No. 43 [hereinafter Defs.' Mot.], Vaughan Defs.' Stmt. of P. & A. in Supp. of Defs.' Mot., ECF No. 43-1 [hereinafter Defs.' Mem.]; (2) Plaintiffs' Motion for Class Certification, ECF No. 48; (3) Vaughan Defendants' and Lawyer Title Realty Services' Joint Motion to Strike Plaintiffs' Motion for Class Certification, ECF No. 55; and (4) Plaintiffs' Motion for Leave to Late-File Their Motion to Certify Class, ECF No. 62. For the reasons that follow, Vaughan Defendants' and Computershare Trust Company's Joint Motion to Dismiss is granted, and the rest are denied as moot.

## II.

### A.

Vaughan Place is a complex of 33 residential condominium buildings with separate and distinct street addresses in Washington, D.C.[3] Am. Compl., ECF No. 39, ¶¶ 25, 42. Across all 33 buildings, there are a total of approximately 574 condominium units, and the number of units in each building varies. *See id.* ¶¶ 29, 35, 37. The complex also includes a leasing office, commercial space, parking lots, and other shared space. *Id.* ¶ 25.

VMG Associates L.P. originally developed and owned Vaughan Place in the mid-1980s. *Id.* ¶ 26. VMG sold Vaughan Place in 1991 to Lincoln Square Corporation II, *id.* ¶ 27, which in turn sold it to MP Trustee LLC in 2005, *id.* ¶ 28. Shortly thereafter, MP Trustee sold

---

[2] The court granted Defendant Computershare Trust Company's Motion for Joinder to Defendants Vaughan McLean and Vaughan Place, LLC's Joint Motion to Dismiss, ECF No. 73, on May 30, 2025. *See* Minute Order, May 30, 2025.

[3] Plaintiffs occasionally assert in their Amended Complaint that Vaughan Place is made up of 34 buildings. *See, e.g.*, Am. Compl. ¶ 39. Because Vaughan Defendants also describe Vaughan Place as being made up of 33 buildings, *see, e.g.*, Defs.' Mem. at 3; Defs.' Joint Opp'n to Pls.' Mot. for Class Cert., ECF No. 63, at 3, the court assumes the correct number of buildings is 33.

approximately 161 of the 574 condominium units to third parties. *Id.* ¶ 29. MP Trustee then sold its remaining interests to Defendant Vaughan McLean, LLC in 2007. *Id.* ¶ 30.

During its ownership of Vaughan Place, VMG registered Vaughan Place with the Rental Accommodations Division (RAD) of the District of Columbia's Department of Housing and Community Development (DHCD) in a particular way: RAD requires buildings not subject to the District's rent-control requirements be registered as exempt. *Id.* ¶ 34; *see* D.C. Code § 42-3502.05. Because Vaughan Place was exempt, VMG originally filed Claim of Exemption forms for each of the 33 buildings of Vaughan Place, and each building was subsequently assigned a unique Exemption Number. *Id.* ¶ 34. Lincoln Square and MP Trustee both registered Vaughan Place the same way. *Id.* ¶¶ 35–37.

But in 2007, after acquiring MP Trustee's remaining interests in Vaughan Place, Vaughan McLean approached registration with RAD differently. Rather than register each of the 33 buildings, it registered each individual unit. *Id.* ¶ 38. For example, Vaughan McLean registered exemptions for each of the five units it owned in the eight-unit building at 3800 Rodman Street, N.W. *Id.* It did not, however, register the three units that had been sold individually by MP Trustee a few years prior nor, seemingly, the building as a whole. *Id.* Vaughan McLean applied this practice to all of its units in Vaughan Place. *See id.*

In 2011, however, Vaughan McLean reverted to its predecessors' practice. It registered with RAD each of the 33 buildings as "multi-family" housing accommodations. *Id.* ¶ 39. So this time, for example, it registered with a single Claim of Exemption form the building at 3800 Rodman Street, N.W. as one "multi-family" "Housing Accommodation" consisting of five units. *Id.* Vaughan McLean similarly characterized its Vaughan Place holdings as separate buildings

(rather than as separate units) when it applied for Certificates of Occupancy and other business licenses. *Id.* ¶¶ 40–41.

## B.

TOPA grants tenants in multi-unit buildings whose landlords seek to sell their residences "an opportunity to purchase [their] housing accommodation at a price and terms that represent a bona fide offer of sale." D.C. Code § 42-3404.02(a). Although TOPA originally afforded this right to tenants of single- and multi-family accommodations, it was amended in 2018 to essentially exempt single-family accommodations from the statute's coverage, except in a few narrow instances. Am. Compl. ¶ 49; *see* D.C. Code § 42-3404.09. Today, while landlords seeking to sell multi-family accommodations must still provide their tenants notice and an opportunity to purchase, landlords of single-family accommodations are generally required only to provide tenants notice of their intent to sell. *Compare* D.C. Code § 42-3404.02, *with id.* § 42-3404.09.

Between July and August 2021, Vaughan McLean informed its tenants, including Plaintiffs, of its intent to sell its interests in Vaughan Place to Vaughan Place, LLC. *Id.* ¶¶ 46–47. Vaughn McLean treated the units as individual single-family accommodations, instead of collectively as multi-family accommodations, under TOPA. It therefore served its tenants only with a Form 1 "Notice of Intent to Sell," which is designed "to help property owners fulfill their obligations under TOPA" applicable to the intended sale of single-family accommodations. *Id.* ¶¶ 48–49. It did not give its tenants an opportunity to purchase their units. *Id.* ¶¶ 53–56.

Plaintiffs complained to Vaughan McLean directly that they were not issued the correct notice under TOPA. Am. Compl. ¶ 53. According to Plaintiffs, Vaughan McLean's characterization of its units as single-family accommodations in the context of the intended sale was inconsistent with its characterization of its properties to RAD as multi-unit buildings. *See id.*

¶ 51.  So, when Vaughan Defendants proceeded to close on the sale having served Plaintiffs only notice, they allegedly deprived Plaintiffs of "any opportunity to exercise their lawful TOPA rights and to form a Tenant Association to negotiate and perhaps purchase the building that they lived in," *id.* ¶ 53, despite Plaintiffs being "ready, willing, and able to . . . purchase the entire building that they resided in at the time of the sale," *id.* ¶ 57.

Vaughan McLean ultimately sold nearly all of its Vaughan Place interests to Vaughan Place, LLC, including the units of nine of the named Plaintiffs, *id.* ¶ 54, and the buildings of the other 14 named Plaintiffs (though it retained ownership of those 14 Plaintiffs' individual units), *id.* ¶¶ 32, 53–56.  To finance this purchase, Vaughan Place, LLC obtained two loans secured by deeds of trust held by Trustee Defendants.  *Id.* ¶¶ 75–76; *see also* Order, ECF No. 59.

## C.

On September 13, 2021, 13 of the 23 named Plaintiffs filed petitions with DHCD challenging the notice they received from Vaughan McLean.  *See generally* Defs.' Mot., Ex. A, ECF No. 43-2 [hereinafter Defs.' Ex. A].[4]  All alleged, among other things, that every tenant in those Plaintiffs' buildings should have received a Form A or Form B "Offer of Sale" applicable to housing accommodations of five or more units, rather than a Form 1 "Notice of Intent to Sell" applicable to single-family accommodations.  *See id.*  Plaintiffs who resided in the eight-unit building at 3800 Rodman Street, N.W., for example, argued that Vaughan McLean's sale of the five units it owned there was really a sale of a housing accommodation of five or more units, consistent with Vaughan McLean's most recent RAD filing.  *See* Defs.' Ex. A at 2.  Vaughan McLean, therefore, should have served "*all* of its tenants of this building" offers of sale for a housing accommodation of at least five units.  *Id.*

---

[4] Citations to Defendants' Exhibits A, B, and C in their Motion to Dismiss reference the page numbers set by CM/ECF.

DHCD rejected all petitions.  *See* Defs.' Mot., Ex. B, ECF No. 43-3 [hereinafter Defs.' Ex. B].  In nearly identical notices, DHCD stated simply that each petitioner's unit was a "single unit in a residential condominium" and that, because no petitioner could show they were unaware they were living in condominium units, the petitioners were correctly "only entitled to written notice of [Vaughan McLean's] intent to [sell] the single-family accommodation."  *See, e.g.*, Defs.' Ex. B at 4–5.  DHCD also rejected Plaintiffs' petitions for reconsideration.  Defs.' Mot., Ex. C, ECF No. 43-4.

Those 13 Plaintiffs then appealed to the D.C. Court of Appeals.  *See DeMetro v. D.C. Dep't of Hous. & Cmty. Dev.*, 310 A.3d 1034 (D.C. Feb. 15, 2024); Defs.' Mot., Ex. D, ECF No. 43-5 [hereinafter Defs.' Ex. D].  The court acknowledged that DHCD's decisions may be correct, but it ultimately reversed and remanded because the agency's factual findings and legal conclusions were not adequately substantiated.  *See DeMetro*, slip op. at 2, 8; Defs.' Ex. D at 2, 8.  The court directed DHCD to resolve in the first instance "whether the bulk sale of multiple condominium units should be treated as multiple individual sales of single-family accommodations or the single sale of a multi-unit property," and then explain its determination that Plaintiffs' units met the statutory definition of a "single-family accommodation."  *DeMetro*, slip op. at 6, 8; Defs.' Ex. D at 6, 8.

But before DHCD could do so, Plaintiffs withdrew their DHCD petitions on July 9, 2024, and told Defendants that same day that they "believed this should end [DHCD]'s consideration of the matter, as the tenants have taken their claims to the D.C. Superior Court."  Defs.' Mot., Ex. E, ECF No. 43-6.

Indeed, Plaintiffs already had filed a complaint in D.C. Superior Court on June 20, 2024.  Am. Compl. ¶ 72; *see* Defs.' Notice of Removal, ECF No. 1, ¶¶ 1–2.  A month later, Defendant

Lawyers Title Realty Services removed the case to federal court under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).  Defs.' Notice of Removal ¶¶ 12–21.  Plaintiffs then filed an Amended Complaint in this court, asserting five causes of action: against Vaughan Defendants, (1) common-law fraud and civil conspiracy and (2) violation of TOPA; against Vaughan McLean, (3) violations of the District of Columbia's Consumer Protection Procedures Act (CPPA); and against all Defendants (4) declaratory and equitable relief and (5) class-wide relief.  *See* Am. Compl. ¶¶ 99–146.  The basis for all five counts is the alleged mischaracterization of Vaughan McLean's sale of its Vaughan Place holdings as a sale of single-family accommodations, which deprived Plaintiffs of their right under TOPA to the opportunity to purchase.

**III.**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "plausible on its face" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

The court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'"  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation omitted).  But the court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  If the facts as alleged fail to "state a claim upon which relief can be granted," then a court must grant the

motion to dismiss.  *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

## IV.

Defendants move to dismiss on four grounds: that (1) the Vaughan Place units were accurately classified as single-family housing accommodations; (2) Plaintiffs lack "standing"; (3) Plaintiffs who already commenced administrative proceedings before DHCD do not have a cause of action; and (4) the common-law and CPPA claims cannot be sustained.  *See* Defs.' Mem. at 1–3.  The court begins by addressing the cause-of-action and "standing" arguments and then turns to the substantive issues.

### A.    DHCD Plaintiffs' Cause of Action

Vaughan Defendants move to dismiss this action as to those 13 Plaintiffs who filed administrative petitions with DHCD prior to filing this lawsuit ("DHCD Plaintiffs").  *See* Defs.' Mem. at 13–14.  They argue that DHCD Plaintiffs' initial selection of an administrative forum to press their claims forecloses them from doing the same in court.  *Id.*

Owners, tenants, and tenant organizations may seek relief for TOPA violations by bringing either a civil lawsuit under § 42-3405.03 or an administrative petition to DHCD under § 42-3405.03a.  *See also* D.C. Mun. Regs. tit. 1 § 2921.  Additionally, TOPA provides that:

> [t]he rights provided under §§ 42-3405.03 and 42-3405.03a *are in the alternative*.  The party bringing the action may choose the forum and need not exhaust administrative remedies in order to bring an action under § 42-3405.03.  Unless all parties to the action agree otherwise, *once an action has been brought in one forum, an action based on the same or a substantially similar cause of action may not be brought in any other forum*.

D.C. Code § 42-3405.03b(a) (emphasis added).  Defendants interpret this provision to mean that "commenc[ing] an action before DHCD" forecloses a civil suit for the same or substantially similar

causes of action.  *See* Defs.' Mem. at 13.  Under this reading, DHCD Plaintiffs would be barred from bringing their claims to court.  *See id.* at 13–14.

Plaintiffs read the statute differently.  They deny that the statutory text forecloses DHCD Plaintiffs from now pursuing judicial relief.  Pls.' Opp'n to Defs.' Mot., ECF No. 44 [hereinafter Pls.' Opp'n], at 26–31.  As evidence that TOPA permits switching forums, they chiefly point to case law holding that the District of Columbia Human Rights Act (DCHRA) permits commencing an action in court if a prior administrative complaint is timely withdrawn.  *See, e.g.*, *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117 (D.D.C. 2011).

But Plaintiffs' reliance on the DCHRA has no bearing here.  The text of that statute is different.  The choice-of-forum provision in the DCHRA expressly allows claimants who have commenced administrative proceedings to preserve their right to commence an action in court in a few specifically enumerated circumstances.  *See* D.C. Code § 2-1403.16(a) (2015) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court . . . unless such person has filed a complaint hereunder; provided, that where the [DCHRA] Office has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed."); *id.* § 2-1403.16(c)(1) (2025) ("After filing a complaint with the [DCHRA] Office, a person shall maintain all rights to bring suit in any court of competent jurisdiction if: (A) The person submitted a written notice of withdrawal before the completion of the [DCHRA] Office's investigation; or (B) The Office dismissed the complaint on grounds of lack of jurisdiction, no probable cause, or administrative convenience.").

TOPA contains no similar language.  *See Am. Fed. of Gov't Emps., AFL-CIO, Loc. 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C. Cir. 2013) ("As always, we begin with the text of the statute.").

It states only that the right to seek relief in administrative proceedings and the right to seek relief through a civil suit are "in the alternative." D.C. Code § 42-3405.03b(a). And unless all parties consent, "once an action has been brought in one forum, an action based on the same or a substantially similar cause of action may not be brought in any other forum." *Id.* Unlike the DCHRA, TOPA does not expressly provide the aggrieved party a way to preserve the availability of one forum while they pursue their claims in another. The court cannot read into the statute otherwise. *See Coburn v. Heggestad*, 817 A.2d 813, 823 (D.C. 2003) ("[T]here is an inference that all omissions should be understood as exclusions." (internal quotation marks and citation omitted)); *Iselin v. United States*, 270 U.S. 245, 251 (1926) ("To supply omissions transcends the judicial function.").

Further, it is immaterial that DHCD Plaintiffs withdrew their petitions after remand but before DHCD could render a new opinion. Plaintiffs emphasize that the D.C. Court of Appeals vacated DHCD's decisions and remanded them "to allow the DHCD to evaluate the original petitions." *See* Pls.' Opp'n at 29 (quoting *DeMetro*, slip op. at 8) (emphasis omitted). And because DHCD was "still sitting before a blank slate" without having rendered a decision as of the date DHCD Plaintiffs withdrew their petitions, DHCD Plaintiffs insist they were "free to withdraw their claim from [DHCD]'s consideration and bring them forward in the lawsuit they had filed in the D.C. Superior Court on June 25, 2024." *Id.*

Again, Plaintiffs ignore the statute's text. No part of § 42-3405.03b(a) suggests that, once an administrative proceeding commences, a complainant asserting a TOPA violation can withdraw the complaint and put it before a court without the respondent's consent. To the contrary, the need to secure consent is triggered "once an action has been brought in one forum." D.C. Code § 42-3405.03b(a). Thirteen Plaintiffs "brought" an action before DHCD. That selection of an

10

administrative forum closed the path to court. The D.C. Court of Appeals' remand did not give DHCD Plaintiffs the opportunity to make that choice anew.

Finally, contrary to what Plaintiffs suggest, the statute's provision that aggrieved parties "need not exhaust administrative remedies in order to bring" a civil action is not an indication that the statute "clearly contemplates situations . . . where tenants start their cases in the agency, and then move their cases to the courts." *See* Pls.' Opp'n at 30. The express absence of an exhaustion requirement only confirms that the two paths for relief are truly in the alternative: no administrative precursor is required to seek relief in court under § 42-3405.03.

All five causes of action before the court are premised on the claim brought before DHCD—that Vaughan McLean "should have served all the tenants of [its buildings] an Offer of Sale (either Form A or Form B) for a 5+ Unit Housing Accommodation." *See* Defs.' Ex. A (emphasis omitted). DHCD Plaintiffs' civil action is therefore "based on the same or a substantially similar cause of action" as in their DHCD complaints. Because DHCD Plaintiffs have already brought their claim administratively, absent consent from Defendants, which they did not secure, they cannot now bring the same to the courts.[5]

**B.    "Standing" of All Plaintiffs**

Defendants also insist that all Plaintiffs lack "standing" to assert a claim under TOPA because they are individual tenants rather than a tenant organization. Defs.' Mem. at 11. Only tenant organizations, Defendants argue, have a claim under TOPA with respect to the sale of housing accommodations of at least five units. *Id.* Although Defendants invoke the concept of "standing," what they really mean is that Plaintiffs, as individuals, lack a cause of action under the

---

[5] Because the court finds that the unambiguous text of the statute bars DHCD Plaintiffs from seeking relief in this forum, the court does not weigh in on Plaintiffs' arguments that choice-of-forum provisions are not jurisdictional, *see* Pls.' Opp'n at 27–28, or that the court is statutorily obligated to resolve ambiguity in favor of tenants, *see id.* at 30 n.29.

statute.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014).

Defendants point to *Stanton v. Gerstenfeld*, 582 A.2d 242 (D.C. 1990), where, after a tenant organization successfully exercised its right under TOPA to purchase its building of at least five units, a single holdout tenant filed suit under § 42-3405.03 seeking relief for individual harms caused by the original owner's alleged "bad faith bargaining."  *Id.* at 244.  The court held that the individual tenant lacked a cause of action because only a tenant organization could be the "aggrieved" as that term is used in § 42-3405.03.  Citing the requirement in § 42-3404.11 that tenants form a tenant organization to make a contract of sale for a housing accommodation with at least five units, the court so held because the "tenant organization is the sole entity that can conduct with the owner the negotiations required by" TOPA.  *Id.* at 245.  The statutory scheme would be unworkable, it reasoned, if an individual dissenting tenant could disrupt negotiations between the tenant organization and owner by suing to undo an agreement or bargain separately with the owner. *Id.*

Defendants rely on this holding to argue that Plaintiffs, too, cannot seek relief under § 42-3405.03 because they sue as individuals rather than as a tenant organization.  Defs.' Mem. at 11. But Defendants' reliance is misplaced.

As the court pointed out in *Redmond v. Birkel*, 797 F. Supp. 36, 39 (D.D.C. 1992), it was undisputed in *Stanton* that "the housing accommodation had more than five units, that an association had been formed, and that the association had purchased the housing accommodation." *Id.* (quoting *Stanton*, 582 A.2d at 244).  There was apparently no dispute over whether the tenants had received proper notice under TOPA.  *Id.*  The conflict centered on the seller's alleged bad faith bargaining once negotiations for the contract of sale had begun.  *Stanton*, 582 A.2d at 244.

By contrast, the fundamental dispute here is precisely over whether Plaintiffs received proper notice under TOPA.  The facts resemble those of *Redmond*.  In *Redmond*, individual tenants of a housing accommodation of at least five units sued the building's owners for failing to provide notice that the building was being offered for sale, thereby depriving tenants of their statutory right to the opportunity to purchase it.  797 F. Supp. at 37.  The owners, relying on *Stanton*, argued that the tenants of a housing accommodation of at least five units had "no standing to sue for relief as individuals." *Id.* at 39.  But the court emphasized that, unlike in *Stanton*, the tenants in *Redmond* allegedly were not given proper notice to begin with.  *Id.*  And because TOPA "requires tenants to form an organization *after* notice is given," the tenant-organization requirement in § 42-3404.11 was "inapposite to plaintiffs' claims." *Id.* (emphasis added).  Having no predicate reason to form a tenant organization, the tenants in *Redmond* therefore could sue as individuals to challenge the lack of proper notice.  *Id.*

Plaintiffs here, too, did not receive the notice they contend they were due under TOPA.  So, there was no offer to which tenants could respond with a contract for sale or negotiate as a tenant organization as required by § 42-3404.11.  Although the tenants in *Redmond* were challenging a complete lack of notice, Plaintiffs here also had no predicate reason to form a tenant organization upon receiving Form 1 notice.  They therefore have a cause of action to sue as individuals for the notice they allege they are due.

TOPA's text also contemplates the difference between an individual tenant's right to proper notice and a tenant organization's right to contract and negotiate.  It states in relevant part that "[b]efore an owner of a housing accommodation may sell the housing accommodation . . . , the owner shall give *the tenant* an opportunity to purchase the housing accommodation at a price and terms that represent a bona fide offer of sale," D.C. Code § 42-3404.02(a) (emphasis added),

13

and requires that such offers for sale include "[a] statement that *the tenant* has the right to purchase the accommodation" and that "the owner shall make available to *the tenant* a floor plan of the building," *id.* § 42-3404.03 (emphasis added).  But with respect to the actual negotiation and contracting procedures as relevant to housing accommodations of at least five units, it states that "[i]n order to make a contract of sale with an owner, the tenants shall . . . form a *tenant organization*" and lists a host of duties owed by the owner to the "tenant organization."  *See id.* § 42-3404.11(1)–(4).  The definitions applicable to TOPA also treat "tenant" and "tenant organization" as distinct.  *Compare id.* § 42-3401.03(17) (defining "tenant" to mean "a tenant, subtenant, lessee, sublessee, or other person entitled to the possession, occupancy or benefits of a rental unit within a housing accommodation"), *with id.* § 42-3401.03(18) (defining "tenant organization" to mean "an organization that represents at least a majority of the heads of household in the housing accommodation").  A complete reading of the statutory scheme compels a distinction between rights given to individual tenants and those given to tenant organizations. *See Noble v. Nat'l Ass'n for Letter Carriers, AFL-CIO*, 103 F.4th 45, 50 (D.C. Cir. 2024) ("The text must be read in the context of the entire statute."); *cf. Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings.").

The court therefore disagrees with Defendants.[6]  As Plaintiffs point out, § 42-3405.03 permits an "aggrieved . . . tenant . . . seek[ing] enforcement of *any* right or provision" under TOPA to do so through a civil action.  Pls.' Opp'n at 25 (quoting D.C. Code § 42-3405.03 (emphasis

---

[6] In some places in their Amended Complaint, Plaintiffs seek relief for the loss of an opportunity to purchase the "buildings" they argue they were entitled to have under TOPA.  *See* Am. Compl. ¶¶ 53, 57, 112.  But elsewhere, Plaintiffs assert they only seek relief as to the units in which they were tenants.  *See id.* ¶¶ 80–98; Pls.' Opp'n at 25–26 ("Plaintiffs . . . only want a chance to purchase the rental units that they lived in . . . .").  Defendants argue that the former would be impossible.  Defs.' Mem. at 11–12.  The grounds on which the court grants the motion to dismiss ultimately renders this discrepancy immaterial, so the court does not consider this issue.

added)).  Because Plaintiffs seek relief for the violation of their individual right to proper notice, Plaintiffs other than DHCD Plaintiffs have a cause of action under TOPA to resolve whether that relief is due.  It is to that question the court now turns.

### C.    Violation of TOPA Notice Rights

The heart of all Plaintiffs' claims comes down to one question: Does a bulk sale of single rental units in a condominium constitute a sale of multi-family accommodations that triggers tenants' right to purchase under TOPA?  The court holds it does not.

To start, Plaintiffs characterize the Vaughan Place buildings as condominiums or their individual units as rental units within a condominium.[7]  *See, e.g.*, Am. Compl. ¶¶ 29, 38, 47 (referring to "condominium units" or "condominium communities" to describe Vaughan Place); Pls.' Opp'n at 7 (representing the question for the court as being whether "389 condominium units that are rented out and managed by a centralized property manager be deemed a 'Single-family accommodation' for purposes of TOPA"); Defs.' Mem. at 8–9.  The court therefore treats these descriptions as true.[8]

As set out above, the 2018 amendments to TOPA significantly reduced the statute's coverage with respect to single-family accommodations.  Except in a few narrow instances, which no party asserts apply here, owners seeking to sell single-family accommodations are no longer required to give their tenants an opportunity to purchase their residences.  *Lane v. Dep't of Hous. & Cmty. Dev.*, 320 A.3d 1044, 1046 (D.C. 2024).  They are now required only to give notice of the sale within three days of receiving or soliciting an offer.  *Id.*

---

[7] A "condominium" is "real estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of the portions designated for separate ownership. Real estate shall not be deemed a condominium within the meaning of this chapter unless the undivided interests in the common elements are vested in the unit owners."  D.C. Code § 42-1901.02(4); *see id.* § 42-3401.03(2A).

[8] Plaintiffs at times also refer to the "apartment units" or "apartment buildings."  *See, e.g.*, Am. Compl. ¶¶ 37, 102. But nowhere in their complaint or opposition brief do they actually dispute that the units at issue are rental units in a "condominium" as defined in the statute.

TOPA defines a "single-family accommodation" as:

(A)    A housing accommodation, whether freestanding or attached, and the appurtenant land that contains:

    (i) One single-family dwelling; or
    (ii) One single-family dwelling with one accessory dwelling unit; or

(B)    A single rental unit in a condominium, cooperative, or homeowners association . . . .

D.C. Code § 42-3401.03(16A). Plaintiffs contend that the statute on its face belies Vaughan Defendants' characterization of the condominium units as single-family accommodations. They read it to define a "single-family accommodation" as "[a] housing accommodation . . . and the appurtenant land that *contains* . . . [a] single rental unit in a condominium." *See* Pls.' Opp'n at 12. They argue that, because Vaughan Place clearly "contains" more than a "single rental unit," Vaughan Place does not meet the statutory definition of a "single-family accommodation." *Id.*

Plaintiffs' reading is incorrect. Words must be understood based on not only their meaning, but also their "placement and purpose." *Bailey v. United States*, 516 U.S. 137, 145 (1995). The word "contains" appears only in the first subsection of § 42-3401.03(16A); it does not extend to the second subsection, § 42-3401.03(16A)(B). It is relevant only insofar as it specifies what a "housing accommodation" must "contain" to fall within the definition of "single-family accommodation": either "[o]ne single-family dwelling" or "[o]ne single-family dwelling with one accessory dwelling unit." Put another way, a "single-family accommodation" can be either (1) a housing accommodation, whether freestanding or attached, and the appurtenant land that either contains one single-family dwelling or contains one-single family dwelling with one accessory dwelling unit *or* (2) a single rental unit in a condominium, cooperative, or homeowners association. The placement of "contains" within § 42-3401.03(16A)(A) only makes Plaintiffs' reading

untenable. The meaning of a "single-family accommodation" therefore unambiguously includes "[a] single rental unit in a condominium."[9]

Under such a construction, a single rental unit within Vaughan Place is a "single-family accommodation." And § 42-3404.09 clearly establishes that TOPA "shall not apply to single-family accommodations except" in those narrow circumstances that do not apply here.

Notwithstanding the statute's plain text, Plaintiffs would have the court read something more into the statute: that the aggregation of the sale of many single-family accommodations should be treated as a sale of multi-family accommodations. *See* Pls.' Opp'n at 16. Such a construction, however, would impermissibly enlarge the statute. There is no provision in the relevant statutory scheme that suggests that the presence of multiple single-family accommodations in the same building changes their status. And it makes no distinction between companies owning hundreds of such units and individuals owning only one or two.

Plaintiffs point to a number of sources to argue otherwise. Most emphatically, they repeatedly underscore Vaughan McLean's registration and licensing of Vaughan Place with various government agencies as distinct buildings rather than individual units. Am. Compl. ¶¶ 39–41; Pls.' Opp'n at 10. These other regulatory filings, however, have no bearing on how the court interprets TOPA's statutory text. The statute's plain meaning controls, not how Vaughan McLean may have responded to other regulatory requirements.[10]

---

[9] Plaintiffs also accuse Defendants of "making the somewhat outrageous claim that the Vaughan Place portfolio sale was of 'a *single* rental unit in a condominium,'" when in fact it was a sale of "*[m]ultiple* rental units in a condominium complex." Pls.' Opp'n at 12. Nowhere do Defendants make that argument. Defendants' position is that "the Vaughan Units are single-family housing accommodations" within the meaning of TOPA because "[e]ach Vaughan Unit is a single-family rental within a condominium." Defs.' Mem. at 8–9. Defendants do not conceive of the bulk sale as the sale of one single rental unit as Plaintiffs represent.

[10] Plaintiffs' reference to *Linen v. Lanford* is unpersuasive. *See* Pls.' Opp'n at 21–23. There, the D.C. Court of Appeals affirmed the trial court's determination that the property in question was a single-family home rather than a two-unit accommodation. *See* 945 A.2d 1173 (D.C. 2008). But that determination was based on a host of other supporting factors, including a prior adjudicative proceeding that found that the landlord had been illegally renting a single-family home as a two-unit accommodation; the landlord's subsequent (unspecified) registration of the property

Plaintiffs' reliance on other parts of the D.C. Code is also unavailing. They cite D.C. Code § 42-3502.05(a)(3)(E), which looks to "the aggregate of the condominium rental units and any other rental units owned by the natural person(s) claiming" a particular rent-control exemption. *See* Pls' Opp'n at 14. But this subsection applies specifically and narrowly "[f]or purposes of determining the eligibility of a condominium rental unit for the exemption provided by" that specific paragraph.[11] *Id.* The court cannot simply pull an aggregation principle out from one part of the D.C. Code and drop it into another, especially when it comes with explicit limitations as to its application. As Defendants point out, "'single-family housing accommodation' and 'multi-family accommodation' are terms of art which carry specific meaning within the context of the statute." *See* Defs.' Mem. at 10. The definition of "single-family accommodation" specific to TOPA cannot be overcome by pointing to seemingly advantageous provisions elsewhere.

Plaintiffs also cite a 2013 DHCD decision letter that concluded that, "[f]or transactions in which all economic interests are transferred in an owner of a condominium building used and operated as a multiple unit housing accommodation, whether consisting of 2-4 rental units or 5 or more rental units, an owner must serve tenants and [DHCD] with an appropriate multiple unit offer of sale unless the Owner offers tenants an opportunity to purchase their single family rental units at a price and terms representing good faith value for a single unit." *See* Pls.' Opp'n, Ex. C, ECF

---

as a single-family home; another court's determination describing the property as a "single-family house"; and the fact that the property was located in a zone where only single-family homes were permitted. *Id.* at 1176 n.1, 1179. Plaintiffs lack a comparable record. And for what purpose or to which agency the landlord amended the "registration" of the property in *Linen* is unspecified. Finally, the question of whether a single building was a single-family home or a two-unit home is substantially different from the question presented here involving multiple buildings and hundreds of condominium units.

[11] This subsection also applies "[f]or purposes of determining the eligibility of a condominium rental unit for the exemption provided . . . by § 42-3404.13(a)(3)." D.C. Code § 42-3502.05(a)(3)(E). Plaintiffs argue that § 42-3404.13's being part of TOPA is compelling evidence that the aggregation permitted in § 42-3502.05(a)(3)(E) should also apply here. *See* Pls.' Opp'n at 15. But there are several reasons not to think so. First, while § 42-3404.13 is indeed part of TOPA, § 42-3404.13(a)(3) does not exist. Second, § 42-3404.13 governs cases where the owners are seeking to convert rental units into cooperatives, not, as here, to sell condominium units. Third, § 42-3502.05(a)(3)(E) is entirely irrelevant insofar as it involves the ownership of housing accommodations by "natural persons."

No. 44, at 72–73.[12]  There, the owner of a 22-unit condominium building sought to sell the entire building.  Attempting to comply with TOPA, the owner served each of its tenants identical offers of sale for a single-unit accommodation.  Although the offer was to purchase each tenant's individual unit, it was at the value and terms assigned for the entire building.  *Id.* at 71 (describing the offer as compelling a tenant "to pay a purchase price for the entire Housing Accommodation" just to purchase their "individual unit").  DHCD determined that the offer was not "bona fide" because forcing tenants to buy additional units in order to exercise their right to purchase their units thwarted TOPA's purpose.  *Id.* at 72.  Identifying inconsistent determinations between similar cases, DHCD concluded that the owner of a multi-unit condominium building could either offer the sale of the entire building as a multi-unit accommodation or offer the sale of individual units, but for the value and terms for the individual unit, not the entire housing accommodation.  *Id.* at 72–73.

Plaintiffs focus on the first half of this determination.  They insist that this decision letter obligates Vaughan McLean "to provide its tenants with a multi-unit Offer of Sale, either for a 2-4 unit building or for a building with 5 or more units, rather than a Single-family Home TOPA notice to each tenant advising them of their limited right of first refusal to purchase their individual units."  Pls.' Opp'n at 18.

But whatever weight a DHCD opinion might have, this 2013 decision letter has none here because it pre-dates the 2018 amendments to TOPA by five years.  Thus, DHCD had no reason to address whether the statute as amended requires an owner to make available for sale to a tenant a single rental unit in a condominium.

---

[12] Citations to Plaintiffs' Exhibit C in their Opposition reference the page numbers set by CM/ECF.

Finally, Plaintiffs' legislative-history arguments do not carry the day. Plaintiffs argue that nothing in the legislative history of TOPA, including its 2018 amendments, supports Defendants' claim that the sale of its hundreds of condominium units is governed by the provisions applicable to single-family accommodations. *See* Pls.' Opp'n at 18. Citing testimony from third parties that opposed the bill and a quote from a Committee Report that the Chairman of the Council did not waver in his "strong support for the continuation of TOPA's right of first refusal for tenants in multi-family buildings," *see id.* at 18–19; D.C. Council, Report on B22-0315, the "TOPA Single-family Home Exemption Amendment Act of 2018," at 7–8 (Feb. 23, 2018), Plaintiffs argue that "[i]f the 2018 law was meant to help large landlords like Vaughan McLean sell 100% of its extensive holdings within a condominium complex, one would have expected to have seen *some* legislative history confirming that." Pls.' Opp'n at 19.

But in fact one can. In that same Committee Report, problems relating to "portfolio" or "package deal" sales by legal entities owning multiple properties are listed among the concerns animating the amendments. Report on B22-0315 at 4. Even if this legislative history were ultimately inconclusive, no portion of it can overcome the statute's unambiguous text.

Before 2018, Plaintiffs' arguments may have had more teeth. But today, the fact that a building has multiple units does not a "multi-family accommodation" make. In construing TOPA, the courts in the District of Columbia have held that "statutory meaning is to be derived, not from the reading of a single sentence or section, but from consideration of an entire enactment against the backdrop of its policies and objectives." *Richman Towers Tenants' Ass'n v. Richman Towers LLC*, 17 A.3d 590, 615 (D.C. 2011) (internal quotation marks and citation omitted). Since 2018, the policy of TOPA has been to exempt single-family accommodations from its coverage. Because

each unit in Vaughan Place at issue is a single-family accommodation and because the contested sale concerns those single-family accommodations, no quantity of them can make them otherwise.

*    *    *

Though "the court must assume Plaintiff's well-pleaded facts to be true," Pls.' Opp'n at 10 (quoting *Smith v. Howard Univ.*, 605 F. Supp. 3d 103 (D.D.C. 2022)), Plaintiffs' main allegation, that "Vaughan McLean LLC purposely and intentionally mischaracterized its holdings at Vaughan Place as a 'Single Family Home' in order to deprive its tenants of their TOPA rights," Am. Compl. ¶ 51, is a legal conclusion or unsupported inference this court must disregard, *see Papasan*, 478 U.S. at 286; *Kowal*, 16 F.3d at 1276. Taking all other well-pleaded facts as true, Plaintiffs fail to state a claim upon which relief can be granted as to their TOPA claim.

Because Vaughan Defendants accurately characterized its units as single-family accommodations and provided Plaintiffs with proper notice, Plaintiffs' common-law fraud and civil conspiracy and CPPA claims must also fail. All three are premised on the allegation that Vaughan McLean falsely represented the Vaughan Place units as single-family accommodations not subject to TOPA's offer requirement, which the court has now determined it did not do. For the same reason, Plaintiffs' class claims must also fail.

## V.

For the foregoing reasons, Vaughan Defendants' and Computershare Trust Company's Joint Motion to Dismiss, ECF No. 43, is granted. Plaintiffs' Motion for Class Certification, ECF No. 48; Vaughan Defendants' and Lawyers Title Realty Services' Joint Motion to Strike,

ECF No. 55; and Plaintiffs' Motion for Leave to Late-File their Motion to Certify Class, ECF No. 62, are accordingly denied as moot.

Dated:  September 30, 2025

_____
Amit P. Mehta
United States District Judge