**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **KATHERINE DEMETRO, et al.,** | ) | |
| | ) | |
| **Plaintiffs/Counter-Defendants,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-cv-02199 (APM)** |
| | ) | |
| **VAUGHAN MCLEAN, LLC,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |
| | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

**I.**

On September 30, 2025, the court held that the District of Columbia's Tenant Opportunity to Purchase Act (TOPA) did not require Defendant Vaughan McLean, LLC to provide Plaintiffs—current and former tenants in Defendant's condominium buildings—an opportunity to purchase their units when the buildings went up for sale. The court so held because the individual units were "single-family accommodations," which are categorically exempt from TOPA's right to purchase. *See* Mem. Op. and Order, ECF No. 76 [hereinafter Mem. Op.], at 15–21. And the bulk sale of multiple such single-family accommodations did not transform the sale into one of "multi-family accommodations" to which the TOPA right would apply. *Id.* at 15. The court therefore dismissed the entirety of Plaintiffs' amended complaint, including their claims brought under the District's Consumer Protection Procedures Act (CPPA), on the grounds that all counts were premised on the TOPA claim. *Id.* at 21.

Plaintiffs thereafter asked the court to reconsider dismissal of their CPPA claim, arguing that the court had overlooked an alternative "stand-alone" theory that Defendant had deceptively

"represented the units in advertisements and marketing materials as a multi-family apartment complex and not as single-family homes." *See* Pls.' Mot. to Reconsider Dismissal of CPPA Claim, ECF No. 80 [hereinafter Pls.' Recons. Mot.], at 5–6 (citing Am. Compl., ECF No. 39, ¶ 114). Though this theory was not apparent from the face of the amended complaint, the court granted the request, because there were "some facts" to support it. *See* Order, ECF No. 94, at 2. But the court also gave Defendant an opportunity to move to dismiss the CPPA claim under that new theory. *Id.* at 3.

Simultaneously, the court asked the parties whether any disputes remained as to the intentional interference of contractual relationship counterclaim that Defendant had jointly filed with then-co-defendant Vaughan Place LLC—who at that time was the intended buyer of Defendant's properties—alongside their joint motion to dismiss Plaintiffs' *original* complaint. *See* Minute Order, Oct. 8, 2025; Def.'s Countercl. Against Pls., ECF No. 7 [hereinafter Countercl.]. Plaintiffs settled the counterclaim with Vaughan Place, *see* Order, ECF No. 90, but Defendant continued to press the counterclaim against Plaintiffs, *see* Jt. Status Report, ECF. 85.

Now before the court are three motions. First, Defendant moves to dismiss Plaintiffs' narrowed, "stand-alone" CPPA cause of action for failure to state a claim. *See* Def.'s Mot. to Dismiss, ECF No. 95 [hereinafter Def.'s Mot.]. Second, Plaintiffs move to dismiss Defendant's counterclaim primarily on the ground that Defendant abandoned it by failing to renew it upon Plaintiffs' filing of an amended complaint months later. *See* Pls.' Mot. to Dismiss Countercl., ECF No. 91 [hereinafter Pls.' Mot.]. And third, Defendant seeks the court's leave to amend the counterclaim to include a count of malicious prosecution. *See* Def.'s Mot. for Leave to File Am. Countercl., ECF No. 96 [hereinafter Def.'s Mot. to File]. For the reasons that follow, the court denies all three motions.

## II.

To survive a motion to dismiss, a complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).  But it must not do the same for "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor should it "accept inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint," *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023).

## III.

## A.

Start with Defendant's motion to dismiss.  Plaintiffs allege that Defendant has violated the CPPA because Defendant deceptively made "public representations" that the condominium units were multi-family housing then "later disclaimed that status to avoid TOPA obligations." Pls.' Recons. Mot. at 5.  This claim rests largely on just one paragraph in the Amended Complaint stating that, "throughout Plaintiffs['] tenure, Vaughan McLean represented the units in advertisements and marketing materials as a multi-family apartment complex and not as single family homes," Am. Compl. ¶ 114, as well as allegations that Defendant described its buildings as "multi-family" rather than "single-family" in certain regulatory filings made all the way back in 2011, *see id.* ¶¶ 39–40.

3

The CPPA prohibits a wide variety of unfair and deceptive trade practices, including "misrepresent[ing] . . . a material fact which has a tendency to mislead" and "fail[ing] to state a material fact if such failure tends to mislead." D.C. Code § 28-3904(e), (f). Defendant offers only one reason to dismiss: Plaintiffs do not plausibly plead that "advertising a condominium as a single-family residence rather than a multifamily residence would be material to a renter." Def.'s Mot. at 4. They contend that "[n]o reasonable consumer would rent a unit on the speculative hope that it might one day be sold in a manner that would allow that tenant to participate in a collective group that may be able to purchase the building that the unit was in." *Id.* at 5.

The court recognizes that Plaintiffs' allegations are lean. Despite the references to "advertisements and marketing materials," Plaintiffs have not identified or even described any. That the allegedly deceptive representations were made "throughout Plaintiffs['] tenure" also is vague. And the court is unsure that regulatory filings from 15 years ago would fall within the kind of "trade practices" the CPPA is concerned with. *But see* D.C. Code § 28-3901(a)(6) (defining "trade practice" to mean "any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services"); *Baylor v. Mitchell Rubenstein & Assocs.*, 857 F.3d 939, 947 (D.C. Cir. 2017) ("[The CPPA] embraces . . . an expansive understanding of the conduct which constitutes a 'trade practice' . . . ."). The amended complaint therefore does not exactly inspire confidence that "discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. The allegations verge on conclusory.

But the court cannot now dismiss on the basis that Plaintiffs have not plausibly alleged materiality. For one, "[o]rdinarily the question of materiality should not be treated as a matter of law," *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013), and the court has no

reason to deviate from that principle here.  The court cannot now determine whether in fact a reasonable consumer would "attach importance" to a prospective opportunity to purchase under TOPA when deciding to rent a particular unit.  *Id.*

But for another, Defendant does not address other trade practices alleged to be unlawful under the CPPA that may *not* require materiality, such as "representing a characteristic and status that the property did not have" or "representing that a transaction conferred or involved rights which it did not have or involve," that Plaintiffs have alleged as well.  *See* Am. Compl. ¶ 115; D.C. Code § 28-3904(a), (e-1) (containing no express materiality term).  Construing the amended complaint in Plaintiffs' favor and accounting for the CPPA's protection "from a broad spectrum of unscrupulous practices," *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 62 (D.C. 2010), the court will deny Defendant's motion to dismiss.[1]

## B.

Next, Plaintiffs' motion to dismiss Defendant's counterclaim that, as originally filed, contained only a single count of intentional interference of contractual relationship.  The thrust of Defendant's theory is that Plaintiffs knowingly sought to frustrate the sale of Defendant's condominium properties to Vaughan Place by advancing claims in this lawsuit they knew would fail.  *See* Countercl. ¶¶ 44–49.  Plaintiffs offer three reasons to dismiss the counterclaim: (1) Defendant abandoned it by not renewing the counterclaim after Plaintiffs filed their amended complaint; (2) the original counterclaim was brought by both Defendant and then-co-defendant Vaughan Place, who has since settled the counterclaim with Plaintiffs; and (3) Defendant has failed to state a claim.  *See* Pls.' Mot. at 4–18.

---

[1] For clarity, the court points out that, because the CPPA claim now proceeds independently from TOPA, it proceeds as to all Plaintiffs, including those Plaintiffs the court previously held lacked a cause of action under TOPA because they had initiated administrative remedies.  *See* Mem. Op. at 8–11.

The court quickly disposes of the second argument. The fact that Plaintiff settled the counterclaim with one defendant has no bearing on its viability as to the other. The claim does not depend on both defendants' participation in the suit; that the counterclaim refers to both defendants collectively as "Vaughan Entities" simply as shorthand does not mean Defendant no longer has standing. *See id.* at 13. And it is not uncommon to dismiss a complaint as to some defendants but proceed to discovery as to others. To the extent the damages amount may now not be as originally alleged, *see id.* at 13–14, that too is not a basis to dismiss the counterclaim. *Cf. Comm. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987) ("[A] court should not dismiss a complaint on grounds that the relief prayed for is inappropriate, so long as plaintiffs may be entitled to some relief if they are able to prove their claims.").

As to the first, the court holds there was no abandonment, because Defendant was not required to replead the counterclaim after Plaintiffs filed their amended complaint. Plaintiffs are correct, of course, that "if a plaintiff amends her complaint, the new pleading supersedes the old one" and "the original pleading no longer performs any function in the case." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (cleaned up); *see* Pls.' Mot. at 6–7 & n.5. Any responsive pleading or motion to dismiss attached to the original complaint therefore becomes moot. *See Barnes v. District of Columbia*, 42 F. Supp. 3d 111, 117 (D.D.C. 2014). So "[i]t would be reasonable to conclude . . . that a counterclaim is not a distinct pleading, but rather must be included as part of another pleading, such as an answer," and accordingly must be renewed if a Plaintiff amends their complaint. *Hughes v. Abell*, 867 F. Supp. 2d 76, 91 (D.D.C. 2012).

But that "would put form over substance"; "the counterclaim shares more with a complaint" than it does with an answer. *Id.*; *see also* 6 Wright & Miller Fed. Practice & Procedure § 1407 (3d ed. 2026) ("[T]he pleading of counterclaims and crossclaims is subject to the same

Rule 8 standards that apply to the statement of any claim for relief. . . . Likewise, the reply to a counterclaim and the answer to a crossclaim must meet the same requirements that apply to other responsive pleadings. As with all claims for relief, an attempt to invoke Rule 13 must state a claim upon which relief can be granted or it will be subject to dismissal under Rule 12(b)(6)." (footnotes omitted)). It was therefore reasonable for Defendant to view its motion to dismiss the original complaint and the counterclaim as separate. *Hughes*, 867 F. Supp. 2d at 91; *Dunkin' Donuts, Inc. v. Romanias*, Civ.A.00-1886, 2002 WL 32955492, at *2 (W.D. Pa. May 29, 2002) ("[A]n answer responds to the allegations in a complaint, a counterclaim is something independent. Revisions to a complaint do not require revisions to a counterclaim."). At least two circuits also endorse this approach. *See Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 776–77 (10th Cir. 2021) (finding *Hughes* and *Davis v. White*, 794 F.3d 1008 (8th Cir. 2015), "persuasive because the Federal Rules do not speak clearly about whether counterclaims must be repleaded in subsequent answers, counterclaims are distinct from other parts of an answer, and an inflexible rule would not serve the interests of justice" and agreeing that a counterclaim should not be deemed abandoned if allowing it to proceed would not unfairly prejudice the plaintiff).[2] And the reason no action has been taken on the counterclaim is because the court was deciding the defendants' motion to dismiss Plaintiffs' amended complaint. *See* Def.'s Opp'n to Pls.' Mot., ECF No. 92 [hereinafter Def.'s Opp'n], at 5–6. The court thus declines to dismiss for want of prosecution. *See id.* (citing Fed. R. Civ. P. 41(b)).

---

[2] Moreover, all of the numerous out-of-circuit cases Plaintiffs cite involve situations where the counterclaim was attached to an answer, not as here pleaded separately from a motion to dismiss. *See* Pls.' Mot. at 5–8. So to the extent Plaintiffs' argument depends on a close relationship between a counterclaim and an answer, that is inapposite. *See Confederate Mem'l Assoc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) ("[A] motion to dismiss is not ordinarily considered a 'responsive pleading . . . .'").

As to Plaintiffs' merits arguments, the court cannot now entertain them. Plaintiffs answered Defendant's counterclaim nearly two years ago. *See* Pls.' Answer to Countercl., ECF No. 15. A motion brought under Rule 12(b)(6) for failure to state a claim must have been made *before* the answer. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). And the court invited the parties to brief only the issue of whether the counterclaim had been abandoned, not the merits of whether Defendant plausibly stated a claim. *Contra* Pls.' Reply to Def.'s Opp'n at 5.

That said, the court is skeptical that Defendant's counterclaim ultimately will be meritorious. "Once a prima facie case has been established, liability [for tortious interference] may still be avoided if the defendant can establish that his conduct was legally justified or privileged," *Raskauskaus v. Temple Realty Co.*, 589 A.2d 17, 27 (D.C. 1991) (alteration in original) (citation omitted), including that "litigation was pursued in good faith," *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 339 (D.C. 2015). Defendant alleges that the TOPA issue was open-and-shut and that Plaintiffs knew it to be so. *See* Countercl. ¶ 48 ("The Vaughan Entities have been damaged by the costs of defending the instant litigation which include claims that Plaintiffs/Counter-Defendants know are unsupported by existing law . . . ."). But there was no case law directly on point as to the question of whether "a bulk sale of single rental units in a condominium constitute[s] a sale of multi-family accommodations that triggers tenants' right to purchase under TOPA," Mem. Op. at 15, and notwithstanding the statute's "unambiguous text," *id.* at 20; *see also* Countercl. ¶ 46, the court seriously grappled with the question, closely considering the structure of the entire statutory scheme and what D.C. case law was available. Though it would be Plaintiffs' burden, it seems likely that they would be able to show that their arguments as to a statutory right had "some merit" or "colorable basis." *Cobell ex rel. Cobell v.*

8

*Barnhardt*, No. 96-cv-1285, 2019 WL 13139868, at *4 (D.D.C. Mar. 13, 2019) (first quoting 10 Moore's Federal Practice § 54.171; then quoting *Kassatly v. Dynaco Acquisition Corp.*, No. 96-cv-2419, 1997 WL 31104, at *3 (D.D.C. Jan. 22, 1997)).

## C.

Finally, Defendant's request for leave to amend.  Defendant now seeks to add a claim of malicious prosecution.  The court declines to grant the motion, because it is untimely and amendment would be futile.  *See Smith v. Cafe Asia*, 598 F. Supp. 2d 45, 47 (D.D.C. 2009).

Defendant argues that adding the malicious prosecution counterclaim now is warranted "given the tactics implemented by Plaintiffs/Counter-Defendants throughout the course of this litigation."  Def.'s Mot. to File at 2.  But only two things have changed since Defendant brought its original counterclaim in August 2024: the court has ruled on Defendant's motion to dismiss largely in Defendant's favor and granted Plaintiffs' motion for reconsideration as to their CPPA claim.  And Defendant's proposed amended counterclaim asserts nothing more; it identifies no improper "tactics" during the litigation.  The factual allegations in the proposed amended counterclaim are essentially identical to those in the operative counterclaim, except that it now includes the fact that Plaintiffs filed a motion for reconsideration as to their CPPA claim and that the rest of Plaintiffs' amended complaint remains dismissed.  *Id.*, Ex. A, ECF No. 96-1 [hereinafter Proposed Am. Countercl.], ¶¶ 47–49.  So whatever facts Defendant could have alleged to support malicious prosecution were known to it in August 2024.  The proposed count is therefore untimely.

Moreover, amendment would be futile because Defendant has not plausibly alleged that Plaintiffs initiated this lawsuit in bad faith.  *See Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 57 (D.D.C. 2019) ("Denial of leave to amend based on futility is warranted if the proposed claim would not survive a motion to dismiss" (citation omitted)).  A malicious

prosecution claimant must show that the action was instituted without probable cause and with malice. *Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 62 & n.7 (1993); *Ammerman v. Newman*, 384 A.2d 637, 639 (D.C. 1978). Probable cause is "such reason supported by facts and circumstances as will warrant a cautious man in the belief that his action and the means in prosecuting it are legally just and proper," and malice is "the existence of an evil purpose or motive, a wicked or mischievous intent, or a wilful, wanton, reckless or oppressive disregard to the rights of the plaintiff." *Ammerman*, 384 A.2d at 639–41. As discussed above, Plaintiffs' substantive claims were not obviously foreclosed by existing case law. *See supra* Section III.B. And although probable cause depends on the "honest belief" of the person initiating the lawsuit rather than the "actual state of the case," *Ammerman*, 384 A.2d at 640, Defendant's conclusory allegation that Plaintiffs "knew the grounds their claims were founded on were not reasonable," *see* Proposed Am. Countercl. ¶ 63, does not satisfy Defendant's pleading burden to state a plausible claim. The court therefore declines to grant leave to amend the counterclaim.

**IV.**

For the foregoing reasons, (1) Defendant's Motion to Dismiss, ECF No. 95; (2) Plaintiffs' Motion to Dismiss Counterclaim, ECF No. 91; and (3) Defendant's Motion for Leave to File Amended Counterclaim, ECF No. 96, are all denied.

Dated: July 29, 2026

Amit P. Mehta
United States District Judge